*E-Filed 03/16/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HERNANDO CAAMPUED, et al., | No. C 10-0008 RS |
| Plaintiffs, | **ORDER OF REMAND** |
| v. | |
| FIRST FEDERAL BANK OF CALIFORNIA, et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Hernando and Cecilia Caampued ("the Caampueds") filed their Complaint against Defendants First Federal Bank of California ("First Federal"), MTC Financial, Onewest Bank ("Onewest"), and Indymac Mortgage Services ("Indymac") in Santa Clara County Superior Court. The Caampueds allege breach of contract and advance various theories of fraud, negligence and unfair business practices grounded in California statutory and common law. Defendant MTC Financial removed to federal court; the Caampueds now challenge this court's subject matter jurisdiction and move to remand. They disavow any intent to rely on federal law to support their

1  claims. Defendants contend that, were a court to hear the Caampueds' fraud and negligence claims,
2  it would necessarily need to resolve substantial and disputed questions of federal law (specifically,
3  whether a violation of 15 U.S.C. § 1639(h) helps demonstrate defendants' fraud and/or negligence).
4  Plaintiffs have—however haphazardly—supplied alternate state grounds for those claims that might
5  appear to raise a federal question. In any case, their claims also do not require the resolution of a
6  substantial, disputed question of federal law. Remand, therefore, is warranted and this Order does
7  not reach defendants' motion to dismiss. This matter is appropriate for resolution without oral
8  argument, pursuant to Civil Local Rule 7-1(b), and the hearing scheduled for March 18, 2010 is
9  vacated.

## II.  RELEVANT FACTS

This case is at its core a dispute over the rightful ownership and interest in a residential home. The Caampueds purchased a house and the property on which it sits in 1978. They contributed personal funds but also relied on a purchase money mortgage loan. In 2006, the Caampueds decided to refinance their home loan with First Federal Bank and engaged Global Equity Lending as a broker. In May of that year, First Federal approved the Caampued's loan application. Plaintiffs aver that First Federal processed and approved their "no income or no asset," "negative amortization" loan but deny that the lender ever considered their actual income or capacity to make payments. The Caampueds signed various documents, including a Note Secured by Deed of Trust in the amount of $648,000 with an initial interest rate of 7.336% as well as a Deed of Trust and Assignment of Rents. The Note named First Federal as the lender; the Deed of Trust established Seaside Financial Corporation as trustee but, apparently, MTC Financial now stands in its shoes. The Caampueds contend generally that neither Global Equity nor First Federal included various disclosures in the loan documents as required by California law. They argue, for example, that no party explained the "actual nature, concept and/or mechanics of [a] Yield Spread Premium." Nonetheless, they allege that their loan agreement incorporated a yield spread premium of $12,960.

Plaintiffs recite that by February of 2009, Indymac acted as servicer of the loan. Until that time, the Caampueds claim to have "religiously paid the minimum monthly mortgage loan amortization." That February, the Caampueds allege that Indymac improperly raised their required

Order of Remand

2

1 monthly payment and, in response, they paid nothing further. In October, the Caampueds received a
2 "Notice of Default" executed by MTC Financial. On November 23, MTC Financial sent them a
3 "Notice of Trustee's Sale" for their house.

### III. DISCUSSION

A. Remand

The federal removal statute, 28 U.S.C. 1441(a), permits a defendant to remove to federal court "only [those] state court actions that originally could have been filed in federal court . . . ." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Absent diversity of citizenship, federal-question jurisdiction is required. *Id.* The party invoking section 1441 bears the burden of establishing federal question jurisdiction and a district court strictly construes the statute against removal. *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

Federal question jurisdiction analysis necessarily begins with the well-pleaded complaint rule: "Whether a case is one arising under the Constitution or a law . . . of the United States . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . ." *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914). "The rule makes the plaintiff the master of the claim; he may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. The Caampueds allege no fewer than seventeen causes of action; all are labeled as actions grounded in California common or statutory law. Defendants point out, however, that plaintiffs mention and even directly quote from the Truth in Lending Act ("TILA"), the Home Ownership and Equity Protection Act ("HOEPA") amendments thereto, and an accompanying federal regulation. 15 U.S.C. § 1369(h); 12 C.F.R. § 226.364. *See, e.g.*, Compl. ¶¶ 34, 121, 122, 131, 132, 143. The plaintiffs explain that they merely mentioned federal law "in passing." Even if the Caampueds' factual assertions might support a federal HOEPA claim, however, it is long settled that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

While the plaintiffs do not allege any federal cause of action, the inquiry does not end with the face of their Complaint. A narrow corollary to the well-pleaded complaint rule is the "artful pleading" doctrine: a plaintiff "may not avoid federal jurisdiction by omitting from the complaint

allegations of federal law that are essential to the establishment of his claim." *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (internal quotation marks omitted). The artful pleading doctrine allows courts to "delve beyond the face of the state court complaint and find federal question jurisdiction by re-characterizing a plaintiff's state-law claim as a federal claim." *Id.* (internal quotation marks omitted). The artful pleading doctrine typically applies where a state law claim necessarily turns on the court's construction of a substantial, disputed federal question.[1] That said, insofar as the doctrine "raises difficult issues of state and federal relationships," a court may invoke it only in limited, fitting circumstances. *Id.* Mindful of potential substantive implications, this Court must determine here if plaintiffs' reference to federal law is the product of mere garrulousness or if they have "artfully phrased a federal claim by dressing it in state law attire." *Id.*

1. Substantive Federal Question: Plaintiff's Fraud and Negligence Claims

The artful pleading doctrine is appropriately deployed in a special category of state law

---

[1] The artful pleading doctrine also applies where a federal statute's preemptive force is so extraordinary that it converts a state claim, no matter how well-pleaded, into federal one. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003) (characterizing "complete preemption" doctrine as narrow exception to well-pleaded complaint rule and finding that National Bank Act provides exclusive remedy for usury claims against federal banks). "This is because the claim purportedly based on a preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005). Otherwise, a preemption defense is an insufficient ground for removal. *Merrell Dow*, 478 U.S. at 808 (*citing Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908)).

In their motion to dismiss, defendants argue an Office of Thrift Supervision regulation, 12 C.F.R. § 560.2, preempts plaintiffs' claims that First Federal (a "federal savings association" contemplated by the Regulation) failed to make certain disclosures required by California law. The Regulation to which defendants refer states that OTS "completely occupies the field of lending regulation for federal savings associations" and specifically cites any state "disclosure and advertising" laws "requiring specific statements" as fodder for preemption. 12 C.F.R. § 560.2. *See also Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (finding HOLA preempted state law claim that federal bank falsely advertised home loan fees). That said, the Regulation's subdivision (c) provides that HOLA does not preempt "state laws of general applicability" that only incidentally affect federal savings associations. Although the Regulation may create a preemption defense, it does not utterly supplant and displace any state law claim against a federal bank. *See, e.g.*, *Bolden v. K.B. Home*, 618 F. Supp. 2d 1196, 1206 (C.D. Cal. 2008) (finding that the plain language of the Regulation shows that Congress did not intend for HOLA to preempt completely all state regulation of federal lending). This Court may not, then, refashion the state disclosure claims lodged against First Federal into federal ones.

claims where the right to relief depends on the resolution of a substantial, disputed federal question. *Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). As the Supreme Court has explained:

> How and when a case arises under the Constitution or laws of the United States has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto, and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.

*Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936) (citations and internal quotation marks omitted).

Defendants contend that two of plaintiffs' state law claims necessarily require resolution of disputed issues of federal law.[2] In their seventh cause of action, plaintiffs allege First Federal committed fraud when its agents "failed to disclose to [the Caampueds] that there [was] a need to verify their income and ability to repay the would be [sic] new loan." (Compl. ¶ 118.) Plaintiffs list the elements of common law fraud but then add that First Federal also violated the HOEPA amendments to TILA, 15 U.S.C. § 1639(h). The section provides that, for a certain class of high interest mortgages, "[a] creditor shall not engage in a pattern or practice of extending credit to consumers . . . based on the consumers' collateral without regard to the consumers' repayment ability . . . ." Plaintiffs also recite from 12 C.F.R. § 226.34(a)(4) ("Regulation Z") which recognizes a presumptive HOEPA violation if a creditor fails to verify and document a consumer's ability to repay the loan.

That said, the Caampueds allege common law fraud and must ultimately prove its elements. They do not demonstrate that a construction of section 1639(h) will be necessary or dispositive.

---

[2] Defendants note that plaintiffs seek attorney's fees (which, they point out, is a remedy TILA authorizes in appropriate cases). Because plaintiffs do not cite a California statute providing for this remedy in tort, defendants argue this demonstrates that the claim is actually grounded in federal law. A request for attorney's fees, however, cannot be a basis for federal jurisdiction. *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 834 (9th Cir. 2004). The valid exercise of federal question jurisdiction depends upon the substantive claims advanced in a plaintiff's complaint. *Id.*

Presumably, plaintiffs' reference to the HOEPA amendments and Regulation Z is designed to demonstrate at least one way in which the defendant lenders "duped" the Caampueds into an unfavorable loan agreement. Plaintiffs also advance another theory to prove fraud: they cite defendants' alleged failure to disclose or explain the YSP (which they ground, variously, under California Business and Professions Code section 17200 and Civil Code section 1916.7(c)). Indeed, their fraud argument is not limited to any single misrepresentation but cuts more deeply: "Plaintiffs did not know that the misrepresentations, deceit and inducements by Defendants were false and fraudulent, but instead believed them to be truthful and reasonably relied on them, thereby entering into loans without the benefit of the true facts . . . ." (Compl. ¶ 155.)

Although a court might consider the alleged HOEPA violation, it is not necessary to the resolution of the Caampued's fraud claims. When a claim "can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996) (*citing Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)). The Circuit's analysis in *Rains* is instructive. There, the plaintiff brought an employment discrimination claim in state court; his complaint stated at the outset that it "arose" under the laws of the United States and California. *Id.* at 343. Specifically, the plaintiff alleged the tort of wrongful termination in violation of public policy. As the Court acknowledged, one element necessary to this claim was the existence of a fundamental public policy "delineated in constitutional or statutory provisions." *Id.* To establish the requisite policy, the plaintiff cited to Title VII as well as to the California Constitution and Fair Employment Housing Act. *Id.* The Court reasoned that the plaintiff's reliance on federal law did not convert the state law cause of action into a federal claim: "That the same facts could have been the basis for a Title VII claim does not make [plaintiff's] wrongful termination claim into a federal cause of action." *Id.* Like the plaintiff in *Rains*, the Caampued's reference to federal law advances merely one theory of fraud among several others grounded in state law.

In their ninth cause of action, the Caampueds allege negligence but again cite to section 1639(h) and Regulation Z. Although they do not label it as such, plaintiffs likely rely on these

1  sections to demonstrate negligence per se.  More simply, plaintiffs assert that section 1339(h) and
2  Regulation Z establish that a creditor has a duty of care to at least inquire into a consumer's ability
3  to repay loans regulated under the section.  Based on those averments, defendants argue that federal
4  law constitutes a "necessary" element.  Even accepting this as true, defendants have not shown that
5  the duty of care incorporated from federal law is "substantial" or "disputed."  *Shulthis v. McDougal*,
6  225 U.S. 561, 569-70 (1912) ("[A] suit does not arise unless it really and substantially involves a
7  dispute or controversy respecting the validity, construction or effect of such a law, upon the
8  determination of which the result depends.").

9  In *Merrell Dow*, the Court emphasized that the nature of the federal interest at stake has
10  jurisdictional relevance.  874 U.S. at 814 n.12 (*comparing Smith v. Kansas City Title & Trust Co.*,
11  255 U.S. 180 (1921) (finding a substantial federal question where the constitutionality of a federal
12  statute was "directly drawn in question") *with Moore v. Chesapeake & Ohio R. Co.*, 291 U.S. 205
13  (1934) (finding no substantial federal question where state claim incorporated a federal standard
14  regarding a duty of master to servant)).  The "mere need to apply federal law in a state law claim,"
15  does not "suffice to open the 'arising under' door."  *Grable & Sons Metal Prods. v. Darue Eng'g &
16  Mfg.*, 545 U.S. 308, 313 (2005) (*citing Gully*, 299 U.S. at 117-18 (1936) (calling for a "common-
17  sense accommodation of judgment to [the] kaleidoscopic situations" that present a federal issue and
18  encouraging courts selectively to "pick[] the substantial causes out of the web and lay[] the other
19  ones aside")).  Indeed, the "violation of federal statutes and regulations is commonly given
20  negligence per se effect in state court proceedings." *Grable*, 545 U.S. at 318-19 (*quoting*
21  Restatement (Third) of Torts § 14 cmt. a (2001)).  Essentially, the Caampueds allege a state law
22  claim that incorporates a federal standard of conduct.  A court would merely need to answer whether
23  the Caampued's loan is one contemplated by the section before imposing the standard of care.
24  Defendants do not challenge the statute's construction and certainly do not question its
25  constitutionality.  Defendants also fail to articulate why federal courts have a genuine interest in
26  resolving any state law tort claim that incorporates the standard of care established in TILA or
27  HOEPA.  *Id.* at 314 (removing defendants must demonstrate "a serious federal interest in claiming
28  the advantages thought to be inherent in a federal forum").  In light of the standard favoring remand,

defendants' failure to flag a serious federal interest in the resolution of their tort claim is significant.

2. <u>Attorney's Fees</u>

An order remanding a removed case to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005). The Caampueds seek such an award here. As the Supreme Court has instructed, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin*, 546 U.S. at 141. Defendants advanced an "objectively reasonable" basis for federal jurisdiction—they relied on plaintiffs' own recitations of federal statutes in the Complaint—and the Caampued's request for attorney fees should therefore be denied.

## IV.  CONCLUSION

Defendants have not shown that plaintiffs' Complaint "artfully" pleads inherently federal claims. The Caampueds either supply alternate state grounds or advance state law claims that do not require the resolution of a substantial, disputed area of federal law. The plaintiffs' motion to remand is therefore granted, but their request for an award of attorney's fees is denied.

IT IS SO ORDERED.

Dated: 03/16/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE